UNION COUNTY INVESTMENT COMPANY, Appellee, v. MRS.
M. V. MESSIX, Appellant.

**Garnishment:** DEFECTIVE NOTICE: ABANDONMENT: DISMISSAL. In this
action against husband and wife for goods and merchandise, the garnishees, served with defective notice, made no appearance, and no judgments were taken against them or either of the defendants, and there was no appearance for the husband who was the owner of the property. *Held,* that the wife was not entitled to a dismissal of the garnishment because of the defect in the notice to the garnishees, or on the ground of abandonment of the proceeding.

**Same:** NOTICE. Notice must be given a garnishee to appear and
answer before judgment can be rendered against him, but delay

in giving the notice does not affect the proceedings unless so long as to constitute abandonment. And notice must be given the principal defendant of the garnishment before judgment can be entered against the garnishee, but this notice is for the benefit of the garnishee and the defendant owning the property and not of a third party.

**Same:** DEFECTIVE NOTICE: WAIVER. Defective notice to a garnishee may be waived; so that neither the principal defendant nor a stranger may take advantage of the defect.

**Exemptions:** WHO ENTITLED TO. Statutory exemptions are solely for the benefit of residents of the state, although such residence may not have existed any particular length of time.

**Same:** PROCEEDS OF EXEMPT PROPERTY. Ordinarily proceeds of exempt property resulting from a voluntary sale are not exempt, in the absence of a statute providing otherwise.

**Same:** ATTACHMENT: RELEASE OF PROPERTY. Usually a third party claiming attached property must proceed by way of intervention, but where the property is claimed as exempt a party to the action may proceed by motion for its discharge, or he may have his claim tried and determined with the issue as to the garnishee's liability; but where it is sought to discharge the property by motion the evidence should be clear and satisfactory.

**Same:** RIGHTS OF WIFE: HEAD OF FAMILY. In this action against both husband and wife the husband's insanity did not make the wife the head of the family or transfer to her title to the attached property; and the property never having been exempt to the husband because of his nonresidence the wife could not claim it or the proceeds thereof as exempt to her.

*Appeal from Plymouth District Court.*—HON. WM. HUTCHINSON, Judge.

WEDNESDAY, OCTOBER 18, 1911.

APPEAL from an order overruling defendant's motion to discharge an attachment and release a garnishment had under the attachment. *Affirmed.*

*W. T. Kidd* and *Struble & Struble,* for appellant.

*McDuffie & Keenan,* for appellee.

DEEMER, J.—On March 7, 1910, plaintiff brought action in the district court of Plymouth county against the defendant and her husband, M. V. Messix, to recover a balance claimed to be due for merchandise sold and delivered to the defendants. Upon an allegation that defendants were nonresidents of the state, a writ of attachment issued on the same day, which was immediately served by garnishing the Akron Savings Bank and E. H. Youngstrom, cashier. In the notice of garnishment the garnishees were required to answer at the coming April, 191—, term of court. No notice of the action was served upon either of the defendants until September 9, 1910, when notice was served upon the husband. No notice was served at any time upon Mrs. Messix, but upon April 10 she appeared to the action by attorney, and filed a separate answer and cross-bill. On April 11 she filed a motion to discharge the attachment and garnishment, and on September 27 she filed an amendment thereto, and asked the release of the property held under the garnishment. Again, on October 14, 1910, she filed another amendment to her motion to discharge the attachment, etc. The motion with its amendments was submitted to the court upon affidavits and other documentary evidence at the September, 1910, term of the district court, and on the 15th day of October of that year was overruled. The appeal is from this ruling.

It appears that the original case has never been tried, and that neither of the garnishees has ever made answer to the garnishment. The record shows the following, however, with reference to the property in the hands of the garnishees: About March 1, 1909, the defendant's husband executed a note to the Akron Savings Bank, garnishee, for the sum of $250, which note he secured by mortgage upon all the live stock and farm machinery owned by him. This note having become due, the bank

began pressing the husband for payment some time in January of the year 1910. We now copy from an affidavit made in support of the motion the following:

That after removing to Iowa this affiant on or about the 1st of March, 1910, visited the said Akron Savings Bank to see about said mortgage indebtedness, and that at said time in a conversation with one C. G. Brady, cashier of said bank, the said Brady gave the affiant to understand that he desired the payment of said note, and suggested to this affiant that the property be sold for the purpose of paying this mortgage debt, and, further, that said C. G. Brady said, in substance, to this affiant that she would have to have a sale of said property for this purpose, whereupon and solely by reason of the foregoing facts, and the understanding that, unless she consented to a sale, she would have to submit to a foreclosure of said mortgage, she made arrangements for the sale of said property on one of the public streets of Akron, Iowa, and said property was sold at public sale on the 5th day of March, 1910, the said Akron Savings Bank, by E. H. Youngstrom, an employee of said bank, being in charge of said sale and taking and receiving cash and proceeds of said sale, which proceeds said bank has, as affiant is informed and believes, ever since held in its possession; that said sale was not a voluntary one on behalf of this affiant, but was had by her solely because of the understanding that said Akron Savings Bank must be paid for the mortgage debt of her husband to said bank; that there was realized from said sale about the sum of $400, the exact sum this affiant can not state, and that there remains in the hands of said bank the sum of about $116 above the indebtedness and interest due said bank at the time of said sale.

As a matter of fact, there remained in the bank after the payment of the husband's indebtedness the sum of $121, which was held for defendant's husband. Defendant practically admits that the chattel mortgaged property did not belong to her, but she claims that the balance of the proceeds thereof, now in the hands of the garnishee bank

is exempt to her because of the following facts: Prior to March 3, 1910, she resided with her husband and five minor children in the state of South Dakota, just across the Sioux river from the town of Akron, in Plymouth county, Iowa; on the 9th day of November, 1909, her husband was by the proper authorities of Union county, S. D., adjudged insane, and was thereupon confined in the hospital for the insane at Yankton, S. D.; about the 8th day of December, 1910, he escaped from said institution, and returned home, and on the 25th day of February he was again returned to the hospital for the insane at Yankton, S. D., where he has ever since been confined. Defendant and her children were compelled to vacate the farm in Union county, S. D., occupied by herself and family as tenants on March 1, 1910, because of the expiration of their lease, and on the 3d day of March, 1910, defendant, with all of her children, removed to Plymouth county, Iowa, with the intention and purpose of making a permanent residence in said county and state. Defendant also stated in her affidavit that since her husband was adjudged insane she has been the head of the family, and that the money in the bank is exempt to her as such. She further stated that she was keeping house in the town of Westfield, in this state, and that she and her children old enough to work were engaged in manual labor, and thus supported the family. Defendant also moved to discharge the garnishment and release the property because the garnishees were not notified to appear and answer on the first day of the term following the notice to them or at any other time, for the reason that no notice of the issuance or service of the writ of attachment has ever been served upon either defendant, and that no judgment has ever been rendered against either of them. The statutes of South Dakota were also introduced in evidence to show that under the laws of that state a married woman is not liable for goods or merchandise of any kind sold

or delivered to the husband. It is upon this record that
we are asked to reverse the order of the trial court, over-
ruling the motion to discharge the attachment and release
the garnishees.

I. We shall first consider the technical grounds re-
lied upon. The record shows that defendant, M. V. Mes-
six, was served with notice of the original action, and in

**1. GARNISHMENT: defective notice: abandonment: dismissal.** this notice he, defendant, was notified that a writ of attachment was asked on the ground that he and his codefendant were nonresidents of the state. The notice of

garnishment contained this statement: "And you are also
notified that you are required to appear on the first day
of the April term of the district court of Plymouth coun-
ty, Iowa, which will commence the 4th day of April, A.
D. 190—, wherein said cause is pending, and answer
such questions as may then and there be propounded to
you, or you will be liable for the entire judgment which
the plaintiff eventually obtains against the defendant."
It will be noticed that the blank following the figures
"190" was not filled out. Defendant contends that the
attachment should have been discharged and the garnishees
released for this reason and for the other reasons hereto-
fore stated. The garnishees have made no appearance,
their answers have not been taken, and no judgment has
been taken against them or against either of the defend-
ants to the main action. The garnishees are not asking
to be discharged, nor is any appearance made for the hus-
band who was the owner of the property. In *Phillips v.
Germon,* 43 Iowa, 101, it is held that notice of attach-
ment by garnishment need not be given to the defendant
in the principal action, and in the same case it is said:
"The petition shows that one or more terms intervened
between the service of the garnishment process and judg-
ment against the garnishee. The intervener insists that
this amounted to an abandonment of the proceedings. But

it can not be so regarded. The proceedings were not in fact abandoned, for judgment was rendered in the cause. Of its pendence the whole world is to be regarded as having notice."

Notice must, of course, be given the garnishee to appear and answer before judgment can be taken against

2. SAME: notice.

him. *Bower v. Hansen,* 129 Iowa, 148. But delay in giving such notice does not affect the garnishment unless such delay be so long as to indicate an abandonment of the proceedings. *Boyer v. Hawkins,* 86 Iowa, 40.

Notice to the principal defendant of the pendency of the garnishment must, of course, be given before judgment can be had against the garnishee. *Schaller v. Marker,* 136 Iowa, 575; Code, section 3947. This notice is for the benefit of the garnishee and the defendant owning the property and not for a third party. *Williams v. Williams,* 61 Iowa, 612; *Hamilton Co. v. Iowa Co.,* 88 Iowa, 364.

Again, it has been held that a defective notice to the garnishee may be waived; and, if this be true, neither the principal defendant nor a stranger may take advantage

3. SAME: defective notice: waiver.

of the defect. *Fanning v. Minnesota Co.,* 37 Iowa, 379; *Wile v. Cohn* (C. C.), 63 Fed. 759; *Gilmore v. Cohn,* 102 Iowa, 254. *Padden v. Moore,* 58 Iowa, 703, relied upon by appellant, is fully explained in the *Gilmore* case. The trial court did not err in overruling the motion to discharge because of technical defects in the proceedings.

II. The following sections of the Code and the Code Supplement seem to be material to a decision upon the merits:

The defendant in the main action may, by a suitable pleading filed in the garnishment proceedings, set up facts showing that the debt or the property with which it is sought to charge the garnishee is exempt from execution, or for any other reason is not liable for plaintiff's claim,

and if issue thereon be joined by the plaintiff it shall be tried with the issues as to the garnishee's liability. If such debt or property, or any part thereof, is found to be thus exempt or not liable, the garnishee shall be discharged as to that part which is exempt or not liable. Code Supp. section 3948.

Any person other than the defendant may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, or any attached debt, present his petition verified by oath to the court, disputing the validity of the attachment, or stating a claim to the property or money, or to an interest in or lien on it, under any other attachment or otherwise, and setting forth the facts upon which the claim is founded; and the petitioner's claim shall be in a summary manner investigated. . . . Code, section 3928.

A motion may be made to discharge the attachment or any part thereof, at any time before trial, for insufficiency of statement of cause thereof, or for other cause making it apparent of record that the attachment should not have issued, or should not have been levied on all or on some part of the property held. Code, section 3929.

If the debtor is a resident of this state and the head of a family, he may hold exempt from execution the following property: . . . Two cows and two calves; . . . the proper tools, instruments or books of the debtor, if a farmer, . . . ; if the debtor is a . . . farmer, teamster or other laborer, a team, consisting of not more than two horses . . . and the wagon or other vehicle, with the proper harness or tackle, by the use of which he habitually earns his living, otherwise one horse; . . . poultry to the value of fifty dollars, and the same to any woman, whether the head of a family or not. . . . Code, section 4008.

When a debtor absconds and leaves his family, such property as is exempt to him under this chapter shall be exempt in the hands of his wife and children, or either of them. Code, section 4016.

In addition to these sections there are several well-settled principles of law which should be stated in order that the legal premise may be fully understood.

The exemptions provided by the statutes quoted are for residents of this state only, 'but the party claiming the exemption need not show that he has been a resident for any particular period. If he has actually come within the state with the intention of remaining, he should be considered a resident. See Code, section 4014; *Cox v. Allen,* 91 Iowa, 469.

**4. Exemptions: who entitled to.**

Again, the general rule is that the proceeds of exempt property resulting from a voluntary sale thereof are not exempt in the absence of a statute providing for such exemption. *Vide, Kinzer v. Stephens,* 121 Iowa, 347; *Friedlander v. Mahoney,* 31 Iowa, 311; *Mudge v. Lanning,* 68 Iowa, 641, and the many cases cited therein.

**5. Same: proceeds of exempt property.**

Ordinarily, where a third party claims the property, he must proceed under section 3928 of the Code, and not under 3929. *Tidrick v. Sulgrove,* 38 Iowa, 339. But, where the property is claimed to be exempt, a party to the action may move to discharge the attachment under section 3929. *Haslings v. Phoenix,* 59 Iowa, 394; *McLaren v. Hall,* 26 Iowa, 297.

**6. Same: attachment: release of property.**

Again, the defendant in the main action may proceed under section 3948 of the Code Supplement, and have his claim of exemption tried and determined with the issue as to the garnishee's liability. When one adopts the summary remedy of motion to discharge, "the case should be made clear and entirely satisfactory; otherwise the party should be left to the other and ordinary means by the proper action for testing the liability of the property levied upon to be seized under the writ." *McClaren v. Hall,. supra; Cox v. Allen, supra.*

Going now to the facts, it will be noticed that the money in controversy is a part of the proceeds of property which might have been exempt to defendant's husband had he been a resident of this state. There is no evidence, however, that the husband ever was a resident of this state.

Moreover, there is nothing in the record showing that
the chattel mortgaged property was ever in
South Dakota, where the husband resided,
and it certainly was not there at the time
of the sale.  If any inferences are to be derived from the
record, it would appear that the property was in this state
at the time it was mortgaged, and remained there until it
was sold.

7. SAME: rights
of wife: head
of family.

Again, the property was sold with the knowledge and
consent of both husband and wife; that is, it was a volun-
tary sale in a legal sense, and the proceeds were not ex-
empt.  But, if exempt, they were exempt to the husband,
for he was the owner of the property and the nominal head
of the family.  If he was not the head of a family
and a resident of the state, he could not claim the
proceeds of the exempt property, even if the sale were
involuntary.  So there is no showing which would make
the property exempt to the husband, even if he were mak-
ing the claim.  The defendant wife is claiming an ex-
emption both through her husband and in her own right.
She can not claim through her husband unless the property
was exempt to him, or it be shown that he has absconded
and left his family.  As the record shows that the husband
has never been a resident of this state and has not ab-
sconded, defendant can not claim through him; and in her
own right she has no claim because neither the property
nor the proceeds thereof has ever become hers.  Moreover,
even if she in some manner acquired the title, she could
not hold any of the property as exempt save perhaps the
one cow, twenty-five chickens, one horse, and one harness
which were covered by the mortgage.  But the difficulty
here is that she never acquired the title to the mortgaged
property or the proceeds thereof from her husband.  The
husband's insanity did not give her title to the property,
nor confer upon her headship of the family.  He did not
abscond from this state so that she may claim, under sec-

tion 4016 of the Code, any exemption he may have had. While exemption statutes are to be liberally construed, we find nothing in the facts which would justify us in holding the property or the proceeds thereof exempt either to the husband or wife.

None of the cases cited and relied upon for appellant run counter to the conclusions reached, and the result is that the order of the trial court must be, and it is, *affirmed.*