FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant, v. H. P. SEWARD, being the same person as HARRY P. SEWARD; SEWARD GRAIN COMPANY; and H. P. SEWARD, doing business as SEWARD GRAIN COMPANY, Appellees.

No. 44722.

JUNE 20, 1939.

REHEARING DENIED SEPTEMBER 22, 1939.

Boardman & Cartwright and Harry Druker, for appellant.

F. E. Northup, for appellee.

RICHARDS, J.—Plaintiff's action is upon a promissory note. The copy attached to the petition indicates that the note was signed by Seward Grain Company and H. P. Seward as makers. Upon an application in the petition a writ of attachment issued. Thereunder the Security Savings Bank of Marshalltown was garnished. There was at the time a deposit in the bank in a sum in excess of $1,700 to the credit of Seward Grain Co. Defendants filed a verified motion for the discharge of the attachment of the deposit. Upon a hearing the motion was sustained, and from that ruling plaintiff has appealed.

It is conceded that of the Seward Grain Co. the defendant H. P. Seward was proprietor, and that he used the style Seward Grain Co. merely as a trade name. Accordingly we will be referring to H. P. Seward as the defendant. In the motion he filed the salient matters set out were these; that during the transactions herein involved the business of defendant was, and for several years had been, the selling of grain for others on commission, said employment being in some respects that of a factor; in this business defendant was engaged in finding purchasers for grain in carload lots, but not acquiring ownership of the grain nor having actual possession of the property, but being duly authorized under custom and usage, and the contract with the principal (the seller) in such transactions to draw sight draft upon the purchaser, accompanied by bill of lading, for the purpose of obtaining for the seller (defendant's principal) advanced payment from the purchaser of a portion of the purchase price, and being duly authorized to receive account sales from the purchaser, to collect the balance, and to pay same to the principal, less rates, charges and defendant's commission; that such transactions were carried on by said H. P. Seward under the name of Seward Grain Co. and consisted of the seller employing defendant to find purchasers for carload lots of

grain at a designated price, for which service the defendant was to receive a stipulated commission of usually $\frac{1}{4}\cancel{c}$ per bushel; that the funds in the Security Savings Bank which were attached consisted solely of funds derived from the sale of grain in carload lots for various principals, and with relation thereto defendant was only an agent, selling on commission and collecting the proceeds of said several sales for the use and benefit of defendant's principal; that said fund on deposit in said bank belongs wholly to customers for whom defendant was so acting as agent, and were returns upon consignments of grain sold in carload lots for said customers, which grain had been shipped direct by the seller to the purchaser, and defendant was a trustee of said fund under an express trust, and said fund was not commingled with other funds pertaining to any other kinds of transactions; that said amount in said account, something over $1,700, was the aggregate of eleven separate deposits made by defendant, each deposit having been made in a transaction of the nature described. In an exhibit attached to the motion each of the eleven transactions and the deposit incident to each was identified and set out in detail. The showing in the exhibit is that in ten of these transactions, the balance due the principal, on completed sale of and final returns upon a carload of grain, was the amount deposited. These balances had been remitted by the purchasers to defendant. At the time of the garnishment defendant had mailed checks to several of the sellers for the amounts of the deposited balances due them respectively, but these checks had not yet cleared. The eleventh transaction shown in the exhibit was one with Sully Cooperative, and with reference to completeness it differed from the others, as will later be noted. The deposits in connection with these eleven transactions set out in the exhibit were, in the aggregate, the exact amount of the total deposit in the bank at the time of the garnishment.

Upon the hearing on the motion the president of the Security Savings Bank and defendant H. P. Seward were examined as witnesses in behalf of defendant. The purely factual matters that were set out in the motion and in the exhibit were affirmed by these witnesses. Their testimony is not controverted by any evidence. Some additional matters to which they testified were these. When carload lots of grain are sold on commission it is usual for the seller to require a partial payment at the time the

carload is shipped to the purchaser. To this end it is the practice of the seller to draw on the commission man for a certain amount, with the bill of lading attached. In order that defendant might meet this necessity in conducting a commission business he had made an arrangement with the Security Savings Bank at the outset of his business several years before the transactions here involved, whereby this bank agreed to handle in a certain manner drafts coming to the bank drawn on defendant as commission man. The arrangement made and carried out was this. Upon a draft reaching the bank it notified defendant. He immediately drew in favor of the bank a draft on the purchaser for the amount of the draft on defendant. The bill of lading was attached to the draft on the purchaser as the bank's security, and the bank thereupon advanced and remitted to the seller the amount of its draft on defendant. In connection with the eleventh transaction above mentioned, the seller, the Sully Cooperative, instead of drawing on defendant, mailed him the bill of lading with a request for $700 advance. In complying with the request defendant gave the Security Savings Bank a draft on the purchaser for $700 and attached the bill of lading thereto, whereupon the bank, instead of remitting directly as in instances in which a draft had been drawn, credited the $700 to defendant's account for the purpose, on part of the bank and defendant, of meeting a check in favor of the seller to be drawn by defendant. The check was immediately drawn and mailed but the bank was garnished before the check could be presented for payment. It was also established that this commission business was the sole occupation of defendant, that at no time had he deposited in this particular account of the Seward Grain Co. in the Security Savings Bank any funds other than those defendant had collected for his customers in carrying on this commission business, and the customers knew the manner in which these affairs were being conducted.

 We first consider a proposition, urged by plaintiff as a ground for reversal, that goes to the procedure. In filing the motion defendant was invoking section 12139, Code 1935, the material portion of which is as follows:

"12139. Discharge on motion. A motion may be made to discharge the attachment or any part thereof, at any time

before trial, for insufficiency of statement of cause thereof, or for other cause making it apparent of record that the attachment * * * should not have been levied on all or on some part of the property held.''

Another statute on which plaintiff relies in argument is section 12136, Code 1935, which reads:

"12136. Intervention—petition. Any person other than the defendant may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, or any attached debt, present his petition verified by oath to the court, disputing the validity of the attachment, or stating a claim to the property or money, or to an interest in or lien on it, under any other attachment or otherwise, and setting forth the facts upon which the claim is founded.''

We have held that ''Ordinarily, where a third party claims the property, he must proceed under section 3928 of the Code [now section 12136, supra], and not under 3929 [now section 12139, supra]. Tidrick v. Sulgrove, 38 Iowa 339.'' Union Co. Inv. Co. v. Messix, 152 Iowa 412, 420, 132 N. W. 823, 826. Relying on this pronouncement plaintiff claims that the motion made by defendant under section 12139 was not permissible procedure. The reason assigned is that defendant's motion urged the claims of third parties to the fund, that is the rights of defendant's customers, rather than the rights of a party defendant. Plaintiff's conclusion is that the matters urged in the motion should have been raised, if at all, by petitions of intervention filed by the eleven third parties, and that the court erred in entertaining and sustaining a motion that raised these issues.

In Tidrick v. Sulgrove, 38 Iowa 339, cited by plaintiff, it was held that the court erred in sustaining the defendant's motion to discharge the levy of an attachment on certain personal property. The motion was filed pursuant to section 3018, Code 1873, now section 12139, Code 1935. Concerning this statute the opinion states:

"It does not, however, contemplate cases where a *third person* claims the attached property, or an interest therein, or lien thereon. Such cases are provided for in section 3016 of the Code, which authorizes such claimant to present his petition verified by oath, setting forth the facts upon which his claim

is founded, and upon which petition his claim may be investigated. In the case before us the defendant set up *the claim of a third party* to the property, as grounds of his motion to discharge the same from the levy. The statute does not authorize the defendant thus summarily to cut off the plaintiff's right to contest the title of the claimant of the property, especially when the latter has not asked to be made a party, and has made no claim to the property in any legal manner.'' (Italics supplied.)

In this Tidrick case the facts offered in support of the motion were these—that the attached property was owned by one Eppard (not a party to the suit), by reason of a chattel mortgage that had been executed thereon by the movant defendant to Eppard. It was on these facts that the court held that the defendant was setting up in his motion the claim of a third party as the ground for discharge of the property. That a defendant may not, as in the Tidrick case, by motion seek discharge of an attachment on the ground he, defendant, did not own the property, it being the property of another, appears to find support in other jurisdictions. And in some of these cases there is the thought that the fact the moving defendant has no interest in the property affords him no standing as a complaining litigant, he being not injured by seizure of property in which he has no interest. First Nat. Bank. v. Collins, 51 Idaho 689, 9 P. 2d 802; Smith v. Fourth Nat. Bk. 145 Ga. 741, 89 S. E. 762.

As we understand the position of defendant, it is that in the instant case the moving defendant was not setting up claims of third parties to property in the loss of which movant had no interest or basis for complaint. He points out that, distinguishing this from the cited cases, defendant Seward was the custodian or trustee of the funds of others, safekeeping the funds, and in that capacity owed the duty to protect and preserve them; that this duty being imposed by the law a correlative right exists to perform the duty; that because of this duty and right and relationship defendant occupied the status of one having such interest in the property, that is in its possession and safekeeping, that he was a proper complaining defendant entitled to resist by motion a wrongful taking.

There is involved the intendment of sections 12139 and 12136, procedural statutes, and there appears to be a dearth of

1222

authority on the specific proposition urged by defendant. Section 12139 is summary in character and the showing in support of a motion filed thereunder should be made clear and entirely satisfactory; otherwise the party will be left to the other and ordinary means for testing liability of the property seized under the writ. McLaren v. Hall, 26 Iowa 297. But thus safeguarded the statute affords a desirable speediness of procedure that the legislature evidently intended. And it appears to us that in interpreting section 12139 this intent to provide proceedings under attachment that will be expeditious should not be overlooked nor in any casual manner thwarted. We think adoption of plaintiff's proposition does not necessarily follow from the holding in the Tidrick case. There the defendant relied on the proposition that the attached property was no longer his; that he had divorced himself from interests therein. Palpably he could not complain because, on his own statement, he could not be hurt, by a taking of the property. In the case at bar the defendant was not in such manner disclaiming. He was asserting rights and duties, true the rights and duties and liabilities of a trustee or custodian, but nevertheless duties and rights, speaking generally, that the law recognizes. Nor can it be said this defendant custodian could not be hurt individually by reason of a loss of these funds. Interpreting these statutes consistently with what appears to have been the intent of the legislature, we are of the opinion that defendant's status was such that the summary procedure he adopted was within the contemplation of section 12139, and was not inhibited by any intendment found in section 12136. The trial court properly entertained the motion.

With respect to whether the court erred in sustaining the motion, the record clearly and convincingly establishes the factual matters of which we have already spoken, and these facts were such that the court rightly found the attachment should not have been levied on the funds.

With reference to the eleventh item of the exhibit in the motion, the transaction with the Sully Cooperative, plaintiff particularly urges that the $700 deposit was defendant's property, and that in any event as to that item the motion should not have been sustained. We are unable to so view that transaction. The $700, by arrangement between the bank and Seward, constituted a credit for one express purpose, i. e., for the pay-

ment to Sully Cooperative of the $700, advanced by the bank upon security of the bill of lading for the carload of corn that belonged to the Sully Cooperative. The credit advanced was carried by the bank in a regular bill of lading account, and a fair deduction from the record is that the $700 was not withdrawable excepting by the Sully Cooperative. The facts imposed a trust for that purpose upon the .$700, and it was not subject to garnishment by Seward's creditors. Jasper County Sav. Bank v. Klauenberg, 218 Iowa 578, 255 N. W. 884. Finding no error in the record the order from which was the appeal is affirmed.—Affirmed.

MITCHELL, C. J., and BLISS, MILLER, SAGER, STIGER, HALE, and OLIVER, JJ., concur.